UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MAB OF PARKSIDE TOWNS 6, LLC,

    Plaintiff,

v.

BLYTHEWOOD PARTNERS, LLC and
SHF PROJECT OWNER, LLC,

    Defendants.

Civil Action No. 23-0266-TDC

**MEMORANDUM OPINION**

Plaintiff MAB of Parkside Towns 6, LLC ("MAB") has filed this civil action against Defendants Blythewood Partners, LLC ("Blythewood") and SHF Project Owner, LLC ("SHF"), in which it alleges breach of contract claims arising from agreements for the purchase and development of certain townhouse lots in Upper Marlboro, Maryland. Blythewood has filed a Motion to Stay the case against Blythewood, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED WITHOUT PREJUDICE.

**BACKGROUND**

**I.**    **The Agreements**

SHF is a Delaware limited liability company that owns a mixed-use real estate development in Upper Marlboro, Maryland known as Parkside at Westphalia ("Parkside"). Blythewood is a separate Delaware limited liability company of which SHF is the sole member, and which is associated with SHF in that it exists to develop parcels of land at Parkside. SHF and Blythewood work together to develop and sell lots within Parkside by having SHF sign "purchase agreements"

under which builders purchase the lots and having Blythewood sign "development agreements" with those same builders under which it prepares the lots for construction by the builders. Rosenfeld Aff. ¶ 12, Mot. Ex. 1, ECF No. 71-1.

MAB is a Maryland limited liability company that has signed a development agreement with Blythewood ("the Development Agreement") and a purchase agreement with SHF ("the Purchase Agreement"), both of which relate to the same 178 townhouse lots ("the Lots") within Parkside. Pursuant to the two agreements, executed on December 26, 2019, Blythewood was required to develop the Lots in order to prepare them for construction of townhouses by MAB, and after such development SHF was required to sell the Lots to MAB, which would then build homes on the Lots pursuant to designs approved by SHF. The development and sale of the Lots was required to be completed in stages, with the development and sale of the first group of Lots to be completed within three years, or by December 26, 2022. No Lots were completely developed and sold by that date.

On January 31, 2023, MAB filed the Complaint in this case in which it alleges that Blythewood failed to complete its obligations related to the development of the Lots in a timely manner, and that it is required to complete those actions before MAB can purchase the Lots from SHF. MAB seeks specific performance of the Development and Purchase Agreements, or, in the alternative, damages for the alleged breaches of those contracts. By agreement of the parties, the Court stayed this case from September 13, 2023 through November 4, 2024 to facilitate settlement negotiations. Since November 2024, the parties have been engaging in discovery, with factual discovery currently scheduled to end on August 29, 2025.

## II.     The Receivership

On November 18, 2024, in a civil action filed against SHF by one of SHF's lenders, CMB Maryland Infrastructure Investment Group 37, LP, the Circuit Court for Prince George's County, Maryland issued an Order Appointing a Receiver of Parkside and of SHF's assets related to Parkside (collectively, "the Property"), pursuant to the Maryland Commercial Receivership Act ("MCRA"), Md. Code Ann., Com. Law §§ 24-101 to 24-801 (LexisNexis 2013). *See* Receivership Order at 1, Mot. Ex. 5, ECF No. 71-5. This order ("the Receivership Order") authorizes the Receiver, Certus Financial, LLC, "to take immediate possession of the Property and to hold, protect, insure, manage, operate the business of and control the Property" and "to take custody of . . . contracts pertaining to the . . . development and/or improvement of the Property." *Id.* The Receiver's powers also include, but are not limited to, the powers to "employ and discharge such agents . . . as are necessary to assist in," among other things, "improving, developing, securing, and marketing the Property for sale"; "maintain or terminate without penalty any existing contracts to which [SHF] is a party and/or that are related to the Property"; and "enforce any development agreements or other agreements between [SHF]" and other parties. *Id.* at 2–3.

The Receivership Order also states that its entry "shall operate as a stay as provided in Md. Code Ann., Com. Law § 24–401." *Id.* at 10.

## DISCUSSION

The parties agree that the Receivership Order operates as a stay on MAB's claims against SHF. In its Motion to Stay, Blythewood argues that the Court should also stay the claims against Blythewood pursuant to the automatic stay provision of the MCRA, Md. Code Ann., Com. Law § 24–401(a), and the terms of the Receivership Order, or, in the alternative, should enter a

discretionary stay as to those claims pursuant to the MCRA's discretionary stay provision, Md. Code Ann., Com. Law § 24-401(b)(1), and the Court's inherent power to control litigation.

## I. Legal Standard

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## II. MCRA Automatic Stay

Blythewood initially argues that the Motion to Stay should be granted because a stay is required pursuant to the MCRA's automatic stay provision, which provides in relevant part that:

> [T]he entry of an order appointing a receiver under [the MCRA] shall operate as a stay of an act to:
>
> (1) Commence or continue a judicial . . . proceeding against the owner [of the receivership property] that was or could have been commenced before entry of the order;
>
> (2) Collect, assess, or recover a claim against the owner that arose before entry of the order;
>
> (3) Obtain possession of, exercise control over, or enforce a judgment against the receivership property obtained before entry of the order . . . .

Md. Code Ann., Com. Law § 24-401(a). The Receivership Order incorporates this provision and also states that its entry operates as a stay as to any act to continue a judicial proceeding "against" SHF or the Property, or to "[c]ollect, assess, or recover a claim against SHF or the Property." Receivership Order at 10.

The automatic stay provision, and the Receivership Order's provision incorporating it, apply in relevant part only to judicial proceedings or acts to collect or recover claims "against" the "owner" of the receivership property, which in this case is SHF, or to acts to obtain possession of or exercise control over the Property, which consists of Parkside and other property owned by SHF. *See* Md. Code Ann., Com. Law § 24–401(a); Receivership Order at 10. However, MAB's breach of contract claim for damages against Blythewood is not asserted against either SHF, which is a legal entity separate from Blythewood, or the Property itself. *Cf. Williford*, 715 F.2d at 126 (holding that after 4 defendants in a case with 28 defendants had the claims against them automatically stayed because they had entered federal bankruptcy proceedings, the remaining defendants, who were not subject to the bankruptcy proceedings, were not also entitled to an automatic stay under the relevant federal statute because "the plain wording of the statute" did not require it).

Moreover, while MAB's claim seeking specific performance of the Development Agreement could, if granted, lead to MAB gaining some control over certain aspects of the Property, an automatic stay of that claim is not presently required because, with discovery not yet completed, it is not clear that any such ruling will actually occur. Though Blythewood points the Court to various orders entered by the Circuit Court for Prince George's County which have stayed other cases against Blythewood pursuant to the MCRA, none of them offer any reasoning as to why the MCRA's automatic stay provision encompasses a claim solely against Blythewood. Blythewood's focus on the close relationship between Blythewood and SHF is also unavailing. Where SHF and Blythewood were established as separate entities, presumably to provide some advantage to the owners, they cannot now argue that they are one and the same when it is

advantageous to do so. Accordingly, the MCRA's automatic stay does not apply to MAB's claims against Blythewood.

### III. Discretionary Stay

Alternatively, Blythewood argues that the Court should stay MAB's claims against Blythewood pursuant to the MCRA's discretionary stay provision, Md. Code Ann., Com. Law § 24–401(b), or the Court's inherent power to control litigation. In addition to the automatic stay provision, the MCRA contains a discretionary stay provision which provides that "a court may order a stay of an act against or relating to an owner [of the receivership property] if the stay is necessary to: (i) Protect the receivership property or business; or (ii) Facilitate administration of the receivership." Md. Code Ann., Com. Law § 24–401(b). When considering a discretionary motion to stay, federal courts typically examine three non-exclusive factors: (1) the impact on the orderly course of justice, sometimes referred to as judicial economy; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *Donnelly v. Branch Banking & Trust Co.*, 971 F. Supp. 2d 495, 501–02 (D. Md. 2013). The parties agree that the Court should apply these factors in addition to those referenced in the statute.

As to the MCRA's discretionary stay provision, Blythewood primarily asserts that a stay is necessary to protect Parkside and to facilitate the administration of the receivership because MAB's discovery requests to Blythewood relate to Parkside and SHF, while pursuant to the Receivership Order, the Receiver has exclusive control over Parkside, possession of the records and contracts related to Parkside, and authority over decisions related to the development of Parkside. Though the fact that the Receiver has control of the records related to Parkside means that Blythewood may need to engage with the Receiver in order to respond to MAB's discovery

requests, or that MAB may need to direct those requests to the Receiver as a third party, there is no discernible reason why such requests would run afoul of the Receiver's activities, and in fact, Blythewood has made at least five document productions to MAB since the Receivership Order was issued. *See* ECF No. 82. Furthermore, because discovery remains ongoing, MAB's claim seeking specific performance of the Development Agreement does not create a sufficiently significant risk of interference with the Receiver's authorities relating to the Property. Thus, the Court does not find that a stay is presently needed to "protect the receivership property" or "[f]acilitate administration of the receivership." Md. Code Ann., Com. Law § 24-401(b).

The general factors for a discretionary stay also do not presently weigh in favor of granting the Motion. As to the impact on judicial economy and the hardship to Blythewood if the claim is not stayed, Blythewood asserts that allowing the claims against it to proceed while those against SHF are stayed would lead to duplicative discovery and trials because the claims against SHF closely relate, factually and legally, to those against Blythewood. However, if the claims against the two defendants are as closely related as Blythewood asserts, the ongoing discovery relating to the claims against Blythewood will likely be directly relevant to the claims against SHF, such that the need for later discovery relating to SHF only will likely be limited. Moreover, though interests of judicial economy would weigh against separate trials for each defendant, where discovery is ongoing and no trial date has been set, it is premature to conclude that the failure to stay the case as to Blythewood will necessitate separate trials.

As for the final factor, the Court finds that a stay would cause prejudice to MAB. A stay entered pursuant to the MCRA must continue until either the Property "is no longer receivership property" or the Circuit Court for Prince George's County enters "[a]n order approving the [Receiver's] final report" or "[a]n order dismissing the case" in which the Receivership Order was

entered. Md. Code Ann., Com. Law, § 24-401(e). At present, Blythewood has provided no information on when these events will likely occur, or any outer time limit on when they will occur. MAB, however, filed this action over two years ago and is still not close to receiving resolution of its claims, particularly those seeking damages. The Court therefore finds that a stay would cause prejudice to MAB.

Upon consideration of all of the factors, the Court finds that Blythewood has not demonstrated "by clear and convincing circumstances," *Williford*, 715 F.2d at 127, that a stay of MAB's claims against it is warranted at this stage of the case. The Motion to Stay will therefore be denied without prejudice, subject to possible renewal at later points in the case.

## CONCLUSION

For the foregoing reasons, Blythewood's Motion to Stay will be DENIED WITHOUT PREJUDICE. A separate Order shall issue.

Date: June 18, 2025

THEODORE D. CHUANG
United States District Judge